UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | Case No. 09-CR-20031 |
| ) | |
| SCOTT HALLIDAY, ) | |
| ) | |
| Defendant. ) | |

## OPINION

This case is before the court for ruling on Defendant's Motion to Suppress Statements (#10). An evidentiary hearing was held on December 3, 2009, and the parties filed proposed findings of fact and conclusions of law following the hearing. Following this evidence presented at the hearing and the arguments of the parties, Defendant's Motion (#10) is DENIED.

## BACKGROUND

On May 6, 2009, Defendant, Scott Halliday, was charged by indictment (#1) with two counts of receipt of child pornography, in violation of 18 U.S.C. § 2252A(a)(2)(B) and (b)(1), one count of possession of child pornography, in violation of 18 U.S.C. § 2252A(a)(5)(B) and (b)(2) and one count of forfeiture pursuant to 18 U.S.C. § 2253. Defendant is represented by appointed counsel, John C. Taylor, and has been released on bond pending trial.

## MOTION TO SUPPRESS

On October 21, 2009, Defendant filed a Motion to Suppress Statements (#10). Defendant stated that, on November 24, 2008, agents of the Government investigated Defendant regarding internet child pornography. Defendant stated that, during the course of the investigation, the agents interviewed Defendant at 1 Quince Dr., Champaign, Illinois, where he was living with his mother, and later interviewed him at the Champaign police department. Defendant stated that he was not

advised of his Miranda rights prior to the statements. Defendant further stated that the circumstances under which the statements were made were coercive and at a time when Defendant felt he was not free to leave. Defendant asked this court to bar the Government from introducing his statements, and their fruit, at trial.

On November 3, 2009, Defendant filed a Brief in Support of Suppression of Confession and Evidence Resulting Therefrom (#11). Defendant argued that the evidence would show that the questions the agents asked Defendant were made to elicit incriminatory statements and that, considering the totality of the circumstances, could be considered "custodial questioning" so that Miranda warnings were required. Defendant argued that a reasonable person could have believed he was not free to leave and "in custody" based on the circumstances at Defendant's home, including the presence of his mother, and based on the circumstances at the police station. Because he was not advised of his Miranda rights, Defendant argued that this court should grant his Motion to Suppress.

On November 25, 2009, the Government filed its Opposition and Memorandum in Opposition to Defendant's Motion to Suppress (#12). The Government set out a very lengthy statement of what the evidence would show at the evidentiary hearing regarding the underlying investigation and the questioning of Defendant, including the fact that the questioning at Defendant's home was audio recorded and the questioning at the police station was videotaped. The Government noted that Defendant was assured multiple times that he was not under arrest and was not being detained. He was also advised that he was free to leave at any time if he wanted to. The Government also noted that Defendant voluntarily agreed to go to the police station and rode in the front seat of the squad car. Defendant was not handcuffed at any time and, while the two agents involved in questioning Defendant at the police station were armed, the agents did not draw their weapons at any time during their entire encounter with Defendant. The Government further noted that Defendant signed written consents to search and a written consent to allow the agents to take

over his computer user accounts. The Government argued that, based upon the facts, Defendant's Motion to Suppress should be denied.

## EVIDENTIARY HEARING

At the hearing, the Government presented the testimony of Eric Bowers. This court notes that it found Bowers' testimony to be very credible. Bowers testified that he is a special agent with the United States Immigration and Customs Enforcement (ICE). Bowers testified that he has special training in child exploitation. Bowers testified that he spoke to Defendant during the course of an investigation of child pornography. Bowers testified that he and Thomas Berola, an ICE task force officer, went to the front door of Defendant's home and that Defendant invited them in. Bowers stated that they spoke to Defendant inside his home and then moved to the front porch because Defendant's mother was present inside the home. Bowers testified that Defendant agreed to continue the interview at the police station because it was "30 degrees" on the porch and his mother was within the residence. Defendant demonstrated his belief that he was not under arrest by returning to the interior of the residence and stating, "Mom . . . I'll be back." Bowers told Defendant's mother, in front of Defendant, that the agents would "bring him back" and that Defendant would "be back in time for work." An audiotape of the interview at Defendant's home and a transcript of the interview were admitted into evidence.

Bowers testified that Defendant did not have a vehicle of his own and rode to the police station in the front seat of Bowers' unmarked vehicle. Bowers testified that Defendant was not handcuffed and was told he was not under arrest and was not detained. Bowers stated that Defendant was taken into the police station through a back entry and did not have to submit to a security check or display his identification. Bowers testified that Defendant was taken to an interview room on the second floor. The interview began at approximately 11:40 a.m. The interview was videotaped and portions of the videotape were presented by the Government at the hearing. A transcript of the interview was also introduced into evidence. The video showed that

Defendant was seated in the room, unhandcuffed, drinking a beverage. Defendant appeared calm and relaxed. Both Bowers and Berola were armed, but neither drew his weapon at any time during the encounter with Defendant. The videotape showed that Bowers stated to Defendant at the beginning of the interview:

> [T]his is a voluntary interview. Okay, you're not under arrest. You're not being detained. You are free to leave at any time that you want to. You're free to answer questions, or not answer questions however you choose.

After Defendant affirmed that he agreed to come to the police station voluntarily and was not handcuffed or restrained in any way during his ride to the police station, Bowers said to Defendant, "if you decide that you want to end the interview and you want to go back to your house just let us know and we'll end the interview and take you back okay?" Defendant then agreed that he was willing to speak to the agents as long as he got to work by 3 o'clock.

The evidence showed that Defendant left the interview room, unaccompanied, to get a drink of water during the interview. The interview concluded at approximately 1:15 p.m. and Defendant was returned to his home.

ARGUMENTS

Following the presentation of evidence, this court set a briefing schedule. On December 17, 2009, the Government filed its Proposed Findings of Fact and Conclusions of Law (#14). The Government argued that it is well settled that not every encounter between an individual and a law enforcement officer requires the admonition of the individual's constitutional rights pursuant to Miranda, even if that individual is suspected of committing a crime. "Miranda warnings are not required merely because the individual questioned by law enforcement officers is a suspect or is the focus of a criminal investigation." United States v. Barker, 467 F.3d 625, 628 (7th Cir. 2006), quoting United States v. Jones, 21 F.3d 165, 170 (7th Cir. 1994). "Miranda warnings need only be

provided when suspects are in custody." United States v. Humphrey, 34 F.3d 551, 554 (7th Cir. 1994), citing Illinois v. Perkins, 496 U.S. 292, 296 (1990).

The Government further argued that an individual is in custody when his movement is restrained to the degree comparable to a formal arrest. Humphrey, 34 F.3d at 554. "[T]he test is not whether the defendant was under a subjective belief that his or her movements were restricted, but whether a reasonable person in the defendant's position would believe that he or she was free to leave." United States v. Budd, 549 F.3d 1140, 1145 (7th Cir. 2008), cert. denied, 129 S. Ct. 2030 (2009), quoting United States v. Lennick, 917 F.2d 974, 977 (7th Cir. 1990). A totality of the circumstances test is used to make this determination. Budd, 549 F.3d at 1145. In considering the totality of circumstances, factors include:

> (1) whether the encounter occurred in a public place; (2) whether the suspect consented to speak with the officers; (3) whether the officers informed the individual that he was not under arrest and was free to leave; (4) whether the individuals were moved to another area; (5) whether there was a threatening presence of several officers and a display of weapons or physical force; (6) whether the officers deprived the defendant of documents [he] needed to continue on [his] way; and (7) whether the officers' tone of voice was such that their requests would likely be obeyed.

Budd, 549 F.3d at 1145, quoting Barker, 467 F.3d at 628-29.

The Government argued that there is no evidence that Defendant's movement was restrained to the degree comparable to a formal arrest. The Government also argued that a consideration of the relevant factors, based upon the facts of this case, could only lead to a conclusion that the statements made by Defendant at his home and at the police station were non-custodial. The Government argued the Seventh Circuit's recent decision in Budd is directly on point. In Budd, the

Seventh Circuit determined that the defendant, who was suspected of distribution and possession of child pornography, was not in custody during his interview with officers at the Moline Police Department. Budd, 549 F.3d at 1145-46. In Budd, the defendant rode with the officers in the front seat of the squad car, was not handcuffed, and was told that he could leave at any time and was not going to be arrested on that date. Budd, 549 F.3d at 1145-46. In Budd, the officers were carrying sidearms, but never made a display of force. Budd, 549 F.3d at 1146.

On December 29, 2009, Defendant filed his Proposed Findings of Fact and Conclusions of Law (#15). Defendant conceded that he was not in custody for Miranda purposes during the interview in his home and on the porch of his home. He also stated that no incriminating statements were made during his ride to the Champaign Police Department so there was no need to suppress any statements made during that time. Defendant stated that "the only remaining question is whether Defendant was in custody when questioned at the Champaign Police Department." He noted that it is uncontested that he was not given Miranda warnings prior to giving incriminating statements at the police station.

ANALYSIS

Based upon Defendant's recent filing, the only issue before this court is whether Defendant was in custody and should have been advised of his Miranda rights during his interview at the police station. A suspect is "in custody" for Miranda purposes when there is "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." United States v. Thompson, 496 F.3d 807, 810 (7th Cir. 2007), quoting Barker, 467 F.3d at 628, quoting Miranda v. Arizona, 384 U.S. 436, 444 (1966). "Custody 'implies a situation in which the suspect knows he is speaking with a government agent and does not feel free to end the conversation; the essential element of a custodial interrogation is coercion.'" Thompson, 496 F.3d at 810, quoting United States v. Salyers, 160 F.3d 1152, 1159 (7th Cir. 1998).

After considering Bowers' credible testimony at the evidentiary hearing, the portion of the

videotape of the police station interview presented at the evidentiary hearing and the arguments of the parties, this court concludes that Defendant was not in custody when he was interviewed at the police station. Considering the relevant factors, this court concludes that Defendant agreed to speak to the agents at the police station and was informed that he was not under arrest and was free to leave. This court further concludes that the evidence showed that the agents did not act in a threatening manner and that there was no display of weapons or physical force. In addition, the agents did not use a tone of voice "such that their requests would likely be obeyed" and, in fact, used a very conversational tone of voice. This court finds that the situation in this case was very similar to the situation in Budd. This court therefore concludes, as the Seventh Circuit did in Budd, that, based upon the totality of circumstances, a reasonable person in Defendant's position would have believed he was free to leave. See Budd, 549 F.3d at 1146. Accordingly, Defendant was not in custody and Miranda warnings were not required. See Budd, 549 F.3d at 1146. There is no basis for suppressing the statements Defendant made during his interview at the police station and Defendant's Motion to Suppress Statements (#10) must be denied.

IT IS THEREFORE ORDERED THAT:

(1) Defendant's Motion to Suppress Statements (#10) is DENIED.

(2) This case remains scheduled for final pretrial on January 19, 2010, at 4:00 p.m.

ENTERED this 6th day of January, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE